IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CHRISTOPHER DUNN,**     6:13-cv-01339- RE

　　　　　　Plaintiff,     **OPINION AND ORDER**

　　v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

　　　　　　Defendant.

**REDDEN**, Judge:

Plaintiff Christopher Dunn brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for insurance benefits under Title II of the Social Security Act. 42 U.S.C. §§ 401-34. For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

1 - OPINION AND ORDER

## BACKGROUND

Dunn filed his application in July 2008, alleging disability since February 1, 2007, due to "arthritis bone on bone right knee meniscus lr [sic] knee." Tr. 146. Dunn was 43 years old on his alleged onset date. His application was denied initially and upon reconsideration. A hearing was held on August 3, 2010. Tr. 53-98. The Administrative Law Judge ("ALJ") found him not disabled. Dunn's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Dunn had the medically determinable severe impairments of osteoarthritis, bilateral knee degenerative joint disease, and status-post left knee surgery. Tr. 42.

The ALJ found that Dunn's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.*

The ALJ determined that Dunn retained the residual functional capacity ("RFC") to perform a reduced range of light work, with no more than standing or walking for two out of eight hours, and sitting for no more than six out of eight hours. He must have the opportunity to alternate between sitting and standing at will. He cannot climb ladders, ropes, or scaffolds. He can only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. He cannot have any concentrated exposure to extreme cold. He can have no more than moderate exposure to hazards. He can less than occasionally walk on uneven terrain. Tr. 43.

At step five, the ALJ found Dunn was capable of performing other work that exists in significant numbers in the national economy. Tr. 46.

Dunn argues that the ALJ erred by: (1) failing to identify Dunn's status post right knee surgery and chronic pain as severe impairments at Step Two; (2) finding him not fully credible; (3) and failing to properly consider the medical evidence and whether Dunn's impairments medically equal a listed impairment.

## DISCUSSION

### I. Step Two

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 US 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

The ALJ properly determined that Dunn had severe impairments at step two and continued the analysis. Any error in failing to identify other limitations as "severe" at step two is therefore harmless.

## II. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir. 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

Under the *Cotton* test, a claimant who alleges disability based on subjective

symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

The ALJ found Plaintiff's medically determinable impairments could be expected to cause some of the alleged symptoms, but that his statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they are inconsistent with the residual functional capacity finding. Tr. 45.

"One strong indication of the credibility of an individual's statements in their consistency, both internally and with other information in the case record." SSR 96-7p at *5, *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). Here, the ALJ pointed to Dunn's testimony that he had lived with "intense, debilitating pain" since the 1986 knee surgery, but admitted he was able to maintain full-time employment until 2007, including a job in which he worked seven days per week for up to sixteen hours per day. Tr. 45, 70-76. The ALJ noted Plaintiff's testimony that between 1986 and 1989 he was essentially housebound, a "vegetable on a couch," which conflicted with his statement that by 1989 he had obtained a job at a car dealership. Tr. 44, 69, 70.

The ALJ properly cited evidence that plaintiff sought job training and reeducation in September 2007 as indicating he thought himself capable of maintaining employment, which conflicts with plaintiff's assertion that he has been disabled since February 2007. This is a

legitimate reason to discount his credibility. *Bray v. Comm'r. Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

The ALJ identified clear and convincing reasons to find Plaintiff less than fully credible as to his limitations. On this record, the ALJ's credibility determination is supported by substantial evidence.

### III. The Step Three Analysis

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ must determine whether a claimant's impairment meets or equals an impairment listed in "The Listing of Impairments" ("The Listings"). *See* 20 C.F.R. Part 404, Subpt. P, App. 1. The Listings describe specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). Most of these impairments are "permanent or expected to result in death." *Id.* "For all others, the evidence must show that the impairment has lasted or is expected

to last for a continuous period of at least 12 months." *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.

The Listings describe the "symptoms, signs, and laboratory findings" that make up the characteristics of each listed impairment. *See* 20 C.F.R. §§ 404.1525(c), 416.925(c). To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *See* 20 C.F.R. §§ 404.1525, 416.925. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. *See* 20 C.F.R. §§ 404.1525(a), 416.926(a).

Although Plaintiff argues here that his combination of impairments meets or medically equals Listing 1.02, he did not make this argument to the ALJ. Tr. 39-49. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). The ALJ relied on the October 2008 opinion of reviewing physician J. Morelos, M.D., who did consider the listings and concluded Plaintiff's impairment was severe but not of listing level. Tr. 45-46, 224. Dr. Moreles found Plaintiff did not require an assistive device, he had minimal gait abnormality, no muscle weakness or atrophy, and no motor or sensory deficit. Tr. 224. The ALJ assigned great weight to Dr. Morelos's opinion because he found it consistent with the evidence. Tr. 46. The ALJ's determination that Plaintiff's impairments did not meet or medically equal a Listing is supported by substantial evidence.

7 - OPINION AND ORDER

## IV. The ALJ Did Not Err By Failing to Develop the Record

Plaintiff contends that the ALJ erred by failing to obtain the 2003 treatment records from Plaintiff's orthopedic surgeon, Brick Lantz, M.D.

The agency must "develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability" and "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence...necessary to properly make such a determination...." 42 U.S.C. § 423(d)(5)(B). The ALJ inquired at the August 2010 hearing whether there were any recent treatment records. Tr. 61. Plaintiff testified he had no recent treatment because he did not have health insurance, and that he last treated with Dr. Lantz who operated on his left knee in 2003. Tr. 61-63. Plaintiff testified that after the surgery he returned to work and worked until February 2007. Tr. 79-80. The ALJ noted the file did not contain Dr. Lantz's records, but it did contain an evaluation from 2007, an orthopedic consultation by Mark Fletcher, M.D., as well as a September 2008 orthopedic consultation by DeWayde C. Perry, M.D., which included x-rays of both knees. Tr. 61, 218-23. Plaintiff's alleged onset date of disability is February 2007. The ALJ's failure to obtain the 2003 treatment records was not error.

## V. The Residual Functional Capacity Analysis

As detailed above, the ALJ found Plaintiff retained the ability to perform a reduced range of light work. Plaintiff contends that the ALJ failed to include exertional and non-exertional limitations arising from his chronic pain. However, the ALJ properly found Plaintiff less than fully credible, and there is no other medical evidence supporting his allegations of disabling pain.

Plaintiff contends that the RFC was erroneous because it did not include limitations arising from his obesity. The ALJ noted Plaintiff's obesity, and found it was not a severe impairment. Tr. 42, 44. The ALJ found Plaintiff's RFC included the limitation to lift and/or carry a maximum of twenty pounds occasionally with only two hours of standing and/or walking in an eight-hour day, as well as a sit/stand option. Plaintiff does not identify what other vocational limitations arise from his obesity.

Accordingly, on this record, the ALJ's evaluation of the medical evidence was reasonable, supported by substantial evidence, and free of legal error.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is based upon the correct legal standards and supported by substantial evidence. The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this 10 day of November, 2014.

JAMES A. REDDEN
United States District Judge